IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| FRANK EDWARD PETERS II, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Cause No. EP-26-CV-1594-DCG |
| | § | |
| CHARISMA EDGE, *Warden*, FCI La Tuna, | § | |
| Respondent. | § | |

**FILED**

2026 JUN 23  PM 4:48

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

## MEMORANDUM OPINION AND ORDER

Petitioner Frank Edward Peters II, Federal Prisoner Number 37897-512, challenges the execution of his sentence through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241.[1] Pet'r's Pet., ECF No. 1. His petition is denied.

## BACKGROUND

Peters is a 51-year-old federal prisoner at the La Tuna Federal Correctional Institution ("FCI La Tuna") in Anthony, Texas, which is within the jurisdiction of this Court. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 37897-512, last visited June 15, 2026). His projected release date is June 6, 2028. *Id.*

Peters was the sole owner of Frannon, Inc., and helped operate Bqute, Inc., in Rancho Cucamonga, California. *United States v. Peters*, 5:25-cr-00096-PA (C.D. Cal.), Plea Agreement, ECF No. 34 at 8. He ran both companies with no payroll expenses and little to no ongoing business operations. Beginning in 2020, he participated in a scheme to defraud the Bank of America, Benworth Capital, and the Small Business Administration. His scheme involved submitting false and fraudulent Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan Program

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in this matter. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

("EIDL") loan applications on behalf of Frannon and Bqute. To induce the lenders to loan him money, he provided phony tax documents and financial statements which inaccurately indicated that Frannon and Bqute had employees, filed tax forms, and made payroll payments. By making these materially false and fraudulent representations in the loan applications, he caused the lenders to transfer PPP and EDIL loan proceeds to his bank accounts via interstate wire.

Peters pleaded guilty to wire fraud in violation of 18 U.S.C. § 1343. *Id.*, Second Am. J. and Commitment, ECF No. 51. He was sentenced to 33 months' imprisonment and ordered to pay $1,211,653.00 in restitution. He self-surrendered to the Bureau of Prisons (BOP) on February 23, 2026. *Id.*, Verification of Surrender, ECF No. 56. He arrived at his designated facility, FCI La Tuna, 22 days later, on March 17, 2026. Pet'r's Pet., ECF No. 1.

In his § 2241 petition, Peters challenges the Bureau of Prisons' failure to award him the First Step Act ("FSA") Earned Time Credits ("FSA Time Credits" or "FTCs") he believes he should have accrued for his time in federal custody between the day he self-surrendered and the day he reported to his designated prison facility. Pet'r's Pet., ECF No. 1 at 4. He also observes that he was given a low recidivism score when he was first assessed on March 25, 2026, and then again on April 17, 2027. *Id.* at 5. He argues that his second low recidivism score entitles him to begin accruing fifteen days of FTCs for every thirty program days of successful participation in evidence-based recidivism reduction ("EBRR") programming or productive activities ("PA's") as opposed to the ten days for every thirty program days that the BOP is allowing him.

### STANDARD OF REVIEW

A prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28

2

U.S.C. § 2241. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a prisoner must show he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

ANALYSIS

### A. Eligibility to Accrue Earned Time Credits Before Reporting to a designated BOP facility

Peters argues that the FSA entitles him to credit for 22 program days and a proportional number of FTCs for the time he spent in federal custody between the day he self-surrendered and the day he reported to his designated BOP facility. Pet'r's Pet., ECF No. 1 at 4. He suggests that 28 C.F.R. § 523.42(a), which provides "[a]n eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)," conflicts with the applicable statute and is unlawful.

The FSA does not mandate that an inmate begin earning FTCs as soon as he is convicted, sentenced, or self-surrenders. Instead, it provides that an inmate's ability to earn FTCs will not begin until after his "sentence commences." Specifically, the FSA provides:

> (B) Availability. – A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed … during official detention prior to the date that the prisoner's sentence commences under section 3585(a).

18 U.S.C. § 3632(d)(4)(B). A sentence commences under 18 U.S.C. § 3585(a) when "the defendant is received in custody awaiting transportation to ... the official detention facility at which the sentence is to be served." The language in 28 C.F.R. § 523.42(a) stating in parenthesis, "the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence

3

will be served," should not be read to misinterpret the date on which a sentence commences under § 3585(a). Rather, it should be read as a point of clarification as to when an inmate is eligible to begin earning FTCs after his sentence commences.

> The FSA requires the Attorney General to develop a risk and needs assessment system to:
>
> (1) determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;
>
> *****
>
> (3) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs ...;
>
> (4) reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison.

18 U.S.C. § 3632(a). The FSA rewards inmates for their successful participation in EBRR programming or PA's by allowing them to accumulate program days and earn FTCs:

> A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>
> > (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
> >
> > (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

4

18 U.S.C. § 3632(d)(4)(A). Accordingly, before participating in EBRR programming or PA's, an inmate must first undergo "a risk and needs assessment" to establish whether he has a "minimum, low, medium, or high risk for recidivism." *Id.* § 3632(a)(1). The risk and needs assessment consist of two components: a Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) score and a Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13). *Lopez v. Edge*, No. EP-25-CV-390-KC, 2026 WL 800757, at *3 (W.D. Tex. Mar. 23, 2026). The PATTERN score is designed to: (1) determine an inmate's recidivism risk; (2) assess an inmate's risk of violent or serious misconduct; (3) determine the type and amount of programming appropriate to reduce an inmate's risk of reoffending; (4) assess an inmate's recidivism risk and programming needs; and (5) determine when an inmate is ready to transfer to prerelease custody or supervised release. 18 U.S.C. § 3632(a). SPARC-13 is used to examine an inmate in areas which can be targeted to reduce his risk of recidivating. Based on the results of SPARC-13, the BOP staff will recommend evidence-based recidivism reduction (EBRR) programs and productive activities (PAs) for an inmate consistent with his needs.

Additionally, the BOP must evaluate each EBRR program and PA to ensure that it meets the FSA's requirements. These FSA requirements include: (1) evidence that the program or activity reduces recidivism or is based on research indicating it is likely to be effective in reducing recidivism, and (2) "is designed to help prisoners succeed in their communities upon release from prison." 18 U.S.C. §§ 3635(3)(A) and (B).

Peters seems to conflate 18 U.S.C. §§ 3632(d)(4)(A) and (d)(4)(B). Section (d)(4)(A) explains how a prisoner earns credits (i.e., by successfully completing EBRR programs and PAs). It also explains how many credits a prisoner can earn (i.e., ten or fifteen, depending on their

5

assessed recidivism risk). Accordingly, § 3632 (d)(4)(A) creates affirmative duties required of the BOP (i.e., a "prisoner ... shall earn time credits as follows ..."). Section 3632(d)(4)(B) describes what the BOP cannot do (i.e., award credit for programming prior to the date an inmate's sentence commences under § 3585). However, it does not dictate what the BOP must do.

Congress could have easily legislated the specific date that an inmate begins earning FTCs. But Congress did not do that. Specifically, Congress did not provide that an inmate shall begin receiving credit upon sentencing or before he arrives at his designated BOP unit. Instead, Congress created a floor, legislating that an inmate was not permitted to begin earning credit before he "is received in custody awaiting transportation to ... the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).

There are several practical reasons for this. First, an inmate is often not in BOP custody at the time of sentencing and is instead in a local detention facility. As a result, the BOP has little to no information about the inmate and cannot complete the required PATTERN and SPARC-13 evaluations. Second, the BOP cannot evaluate EBRR programs and PAs in a non-BOP facility to ensure they meet the FSA requirements. So, an inmate generally cannot begin a BOP-approved EBRR or PA until he reaches his designated facility and is properly evaluated. Indeed, without the needs assessment, the BOP does not know which BOP-approved EBRR programs or PAs are appropriate for the inmate.

Consequently, it follows that Peters could not have "successfully participated" in any recommended programming—and could not have accrued any FTEs—before he arrived at his designated BOP facility, FCI La Tuna, because (1) he did not undergo a risk and needs assessment until he arrived and (2) the BOP did not have the opportunity to evaluate and ensure that

prospective EBRR programs or PAs met Peters' requirements based on his needs identified in his risk and needs assessment. *See, e.g., Poff v. Carr*, No. 4:21-CV-900-P, 2022 WL 2133871, at *5-6 (N.D. Tex. June 14, 2022) (unpublished) ("[A]ny program or activity that [petitioner] seeks FSA time credits for must be approved by the BOP and be assigned to her based on her specific criminogenic needs"); *Hare v. Ortiz*, Civ. No. 20-14093 (RMB), 2021 WL 391280, at *9 (D.N.J. Feb. 4, 2021) (unpublished) ("Time [c]redits are earned only when an inmate successfully completes one of the BOP-approved EBRR programs or PAs related to one of the particular needs assigned to that inmate."); *Milchin v. Warden*, No. 3:22-cv-195 (KAD), 2022 WL 1658836, at *3 (D. Conn. May 25, 2022) (unpublished) ("[A] prisoner may earn time credits only for completing programs to which he has been specifically assigned based on his particular recidivism risk.").

**B. Eligibility to Accrue an Additional Five First Step Act Earned Time Credits for Every Thirty Program Days**

Peters observes that he received a "low" assessment on March 25, 2026, and again on April 17, 2026. Pet'r's Pet., ECF No. 1 at 5. He argues that he is accordingly entitled to begin earning fifteen FTCs for every thirty program days as opposed to the ten days that the BOP is allocating him.

An inmate's initial assessment is completed at his initial classification, which typically occurs within 28 days after the inmate's arrival to his designated facility. *See* Program Statement 5322.13, Inmate Classification and Program Review at 4; Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4) at 8. After an inmate's first assessment is completed, reassessments are completed "at each regularly scheduled Program Review throughout the remainder of the inmate's incarceration." Program

7

Statement 5410.01 at 9. The FSA requires risk reassessments at least annually. *See* 18 U.S.C. § 3632(d)(5) ("A prisoner who successfully participates in evidence-based recidivism reduction programming or productive activities shall receive periodic risk reassessments not less often than annually."). But the BOP requires periodic reviews more frequently—at least every 180 days. Program Statement 5322.13 at 5; *Oldfield v. Rosalez*, No. 1:23-CV-1320-DII-ML, 2024 WL 2759318, at *3 (W.D. Tex. Apr. 22, 2024), *reconsideration denied sub nom. Oldfield v. G. Rosalez*, No. 1:23-CV-1320-DII, 2024 WL 2755691 (W.D. Tex. May 28, 2024). Therefore, the earliest that an inmate can start earning at the higher rate of fifteen credits per thirty programming days is at the second assessment, which normally occurs approximately 208 days after the inmate's arrival to his designated facility (28 days plus 180 days).

Peters was incarcerated on February 23, 2026. Hence, he has been a prisoner for approximately 114 days. His second assessment for the purpose of determining if he should earn fifteen FTCs for every thirty program days is not yet due under either the applicable statute or Program Statement. 18 U.S.C. § 3632(d)(5); Program Statement 5322.13 at 5. Accordingly, he should accrue ten FTEs for every 30 successful program days for another 90 days.

## CONCLUSION AND ORDERS

The Court concludes that Peters' claims are without merit as he cannot show he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The Court accordingly enters the following orders:

**IT IS ORDERED** that Frank Edward Peters II's petition for "Writ of Habeas Corpus 28 U.S.C. § 2241" (ECF No. 1) is **DENIED** and his civil cause is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**SIGNED** this ____ day of June 2026.

DAVID C GUADERRAMA
**SENIOR UNITED STATES DISTRICT JUDGE**

9